UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEVI STACKHOUSE

v.                              Case No. 8:15-cr-177-VMC-TGW
                                         8:18-cv-772-VMC-TGW

UNITED STATES OF AMERICA.

_____/

**ORDER**

This cause is before the Court on Levi Stackhouse's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 110), filed on March 27, 2018. The United States of America responded on July 24, 2018 (Civ. Doc. # 8), and Stackhouse replied. (Civ. Doc. # 9). Also pending are Stackhouse's Motion for Appointment of Counsel (Civ. Doc. # 71), Motion for Prompt Disposition (Civ. Doc. # 72), and a Request for Oral Arguments and Motion for Appointment of Counsel (Civ. Doc. # 74). For the reasons that follow, all Motions are denied.

I.  **Background**

On April 29, 2016, this Court sentenced Stackhouse to 200 months in prison after he pled guilty to one count of being a felon in possession of a firearm, in violation of 18

U.S.C. §§ 922(g)(1) and 924(e)(1). (Crim. Doc. # 90). Stackhouse received a sentencing enhancement under the Armed Career Criminal Act ("ACCA"). (Crim. Doc. # 87 at ¶¶ 22-23). The prior convictions used to support the ACCA enhancement were: (1) a 1990 New York conviction for first-degree manslaughter; (2) a 1986 Florida conviction for armed robbery; (3) a 1987 Florida conviction for sale of cocaine based on a sale that occurred on April 14, 1987; and (4) a 1987 Florida conviction for sale of cocaine based on a sale that occurred on April 22, 1987. (Id.).

Stackhouse filed a direct appeal with the Eleventh Circuit, arguing that his sentence was procedurally and substantively unreasonable. (Crim. Doc. # 106). The Eleventh Circuit affirmed. (Id.).

On March 27, 2018, Stackhouse filed a pro se Section 2255 Motion. (Civ. Doc. # 1; Crim. Doc. # 110). In his Motion, Stackhouse argued that he should not have received the ACCA enhancement because his prior convictions are not valid ACCA predicate offenses. (Civ. Doc. # 2 at 2, 3-15). He also argued that he had received ineffective assistance of counsel because his trial counsel failed to object to the ACCA enhancement. (Id. at 2, 16-17). Later, in his reply, Stackhouse argued that one of his Florida drug convictions –

the 1987 conviction based on the April 22, 1987 sale of cocaine – was not an ACCA predicate offense because the state court's written judgment stated that the conviction was for a third-degree felony offense. (Civ. Doc. # 9 at 1-2).

In September 2018, the Court stayed this case pending the United States Supreme Court's decision in Stokeling v. United States. (Civ. Doc. # 10). Stackhouse thereafter filed his first motion for reconsideration, arguing that the Court committed error under Clisby v. Jones, 960 F.2d 925 (11th Cir. 1992) (en banc), by failing to resolve all of his claims. (Civ. Doc. # 11). Specifically, Stackhouse argued that this Court failed to resolve the issue of "whether a third degree felony under Florida law constitutes a 'serious drug offense.'" (Id. at 1-2, 6). Because the case had been stayed, the Court denied the first motion for reconsideration without prejudice. (Civ. Doc. # 12).

In February 2019, this Court denied Stackhouse's Section 2255 Motion and entered judgment in favor of the Government. (Civ. Doc. ## 13, 14). Stackhouse filed a second motion for reconsideration, again arguing that the Court committed Clisby error, which this Court denied. (Civ. Doc. ## 15, 16).

Stackhouse appealed, and the Eleventh Circuit granted a certificate of appealability ("COA") on two issues:[1]

> (1) "Whether [] Stackhouse's Florida sale-of-cocaine conviction for conduct that occurred on April 22, 1987, qualifies as a 'serious drug offense' under the [ACCA]."
>
> (2) "Whether counsel was ineffective for failing to object to Stackhouse's armed career criminal designation."

(Civ. Doc. # 33 at 3).

On July 15, 2021, the Eleventh Circuit issued its order vacating and remanding this Court's prior order denying Stackhouse's Section 2255 Motion. (Civ. Doc. # 46). The Eleventh Circuit construed the COA to encompass the procedural issue of "whether Stackhouse properly raised the claims that are the subject of the COA [Issue 1], which he raised for the first time in his reply brief before the district court." (Id. at 6). The appellate court wrote: "Although Stackhouse only raised these issues in his reply, he nonetheless brought to the district court's attention (in his first motion for reconsideration) that he was raising new

---

[1] In its COA order, the Eleventh Circuit determined that a COA was not warranted on this Court's determination that Stackhouse's Florida drug conviction for conduct on April 14, 1987, was a "serious drug offense" under the ACCA or on its determination that his Florida armed robbery conviction was a qualifying violent felony under the ACCA. (Civ. Doc. # 33 at 2).

claims, specifically asserting that the district court had committed Clisby error by failing to address them." (Id.). The Eleventh Circuit also noted that Stackhouse raised the ineffective-assistance claim in his initial Section 2255 Motion, and that this Court failed to address it. (Id. at 6 n.1).

Accordingly, the Eleventh Circuit vacated and remanded so that this Court could determine "whether Stackhouse's reply brief – together with his motion for reconsideration reiterating his new arguments – should be treated as a motion for leave to amend his [Section] 2255 motion." (Id. at 6-7). Should this Court reach the merits of the first issue identified in the COA, the Eleventh Circuit explained that it would be this Court's responsibility to address Stackhouse's new arguments in the first instance. (Id. at 7). The remand also included a directive for this Court to address the merits of Stackhouse's ineffective-assistance claim. (Id.).

On remand, this Court determined that "Stackhouse's reply brief, together with his motion for reconsideration, should be treated as a motion for leave to amend his Section 2255 Motion." (Civ. Doc. # 52 at 5). The Court then granted Stackhouse leave to amend his Section 2255 motion, "constru[ing] Stackhouse's amended Motion to include all

5

claims raised in his original Section 2255 Motion and his reply brief, which arguments were reiterated in his motions for reconsideration." (Id. at 6). The United States filed a response to the arguments in Stackhouse's reply brief and first motion for reconsideration on April 19, 2022. (Civ. Doc. # 58).

Finally, the Court granted the parties an opportunity to submit supplemental briefing on two issues: "(1) whether it is procedurally proper to allow claim amendment at this stage of the proceedings, and (2) assuming it is procedurally proper, the merits of Stackhouse's claim under United States v. Jackson, 36 F. 4th 1294 (11th Cir. 2022) [("Jackson I")]." (Civ. Doc. # 65). Stackhouse filed a supplemental brief on July 20, 2022. (Civ. Doc. # 66). The United States responded on August 11, 2022. (Civ. Doc. # 67). Stackhouse also filed a motion for leave to file a supplemental reply, which the Court construed as a reply. (Civ. Doc. ## 68, 69).

Additionally, Stackhouse went on to file various miscellaneous motions: a Motion for Appointment of Counsel; a Motion for Prompt Disposition; and a Request for Oral Arguments and Motion for Appointment of Counsel. (Civ. Doc. ## 71, 72, 74). Likewise, on September 25, 2024, Stackhouse filed an "Addendum and Supplemental Case Law to Defendant's

§ 2255 Motion" (Civ. Doc. # 77), in which Stackhouse attempts to raise a new claim under <u>Erlinger v. United States</u>, 602 U.S. 821 (2024). The United States has responded to that addendum. (Civ. Doc. # 79).

The Motions are now ripe for review.

**II.**   **Analysis**

**A.**   **Motions to Appoint Counsel and Miscellaneous Requests**

On July 7, 2023, Stackhouse filed a Motion for Appointment of Counsel. (Civ. Doc. # 71). In that Motion, Stackhouse requested the appointment of counsel in light of the Court's 2021 order allowing Stackhouse "to [a]mend claims raised in [his] Reply Brief," the United States Supreme Court's grant of certiorari in <u>Brown v. United States</u>, 602 U.S. 101 (2024), and <u>United States v. Jackson</u>, and Stackhouse's "motion pending the out[]come of the Supreme Court[']s ruling." (<u>Id.</u> at 1). Subsequently, Stackhouse also filed a Motion for Prompt Disposition and a Request for Oral Arguments and Motion for Appointment of Counsel. (Civ. Doc. ## 72, 74).

"There is no Sixth Amendment right to counsel during collateral attacks on a sentence." <u>Houston v. United States</u>, No. 8:12-cv-561-WJC-TBM, 2012 WL 1901511, at *1 (M.D. Fla.

May 25, 2012); see also Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further." (citations omitted)). "A petitioner may request appointment of counsel to represent him in his § 2255 proceeding, however, such appointment is within the Court's discretion." Houston, 2012 WL 1901511 at *1 (citing 18 U.S.C. § 3006A(a)(2)(B)). "Under such circumstances, counsel shall be appointed upon request of a financially indigent defendant if the Court determines that 'the interests of justice so require.'" Id.

The Court declines to appoint counsel here because the interests of justice do not require counsel to present Stackhouse's arguments on his behalf. Stackhouse's motions seeking appointment of counsel are denied. Likewise, because the Court is able to resolve Stackhouse's 2255 Motion on the papers, the Court denies Stackhouse's request for oral argument. Finally, Stackhouse's Motion for Prompt Disposition (Civ. Doc. # 72) is denied as moot.

**B.    Section 2255 Motion**

Under Section 2255, a prisoner in federal custody may move to vacate, set aside, or correct his sentence on four grounds: (1) it was imposed in violation of the Constitution or laws of the United States; (2) it was imposed without jurisdiction; (3) it exceeds the maximum authorized by law; or (4) it is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Stackhouse bears the burden of proving that he is entitled to relief under Section 2255. See Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015) ("[W]e note that Rivers bears the burden to prove the claims in his § 2255 motion.").

The Court will address Stackhouse's arguments that the ACCA enhancement was incorrectly applied to him and that his counsel was ineffective for failing to object to the ACCA enhancement.

### 1.   ACCA Enhancement

The ACCA mandates a fifteen-year minimum sentence for a defendant, like Stackhouse, who possesses a firearm and satisfies any of 18 U.S.C. § 922(g)(1)'s conditions while having *at least three* qualifying predicate convictions. 18 U.S.C. § 924(e)(1). Under the ACCA, a predicate conviction is "a violent felony or a serious drug offense, or both,

committed on occasions different from one another." Id. The ACCA defines a "serious drug offense" as:

> (i) an offense under the Controlled substances Act
> (21 U.S.C. 801 et seq.), the Controlled Substances
> Import and Export Act (21 U.S.C. 951 et seq.) or
> chapter 705 of title 46 for which a maximum term of
> imprisonment of ten years or more is prescribed by
> law; or
>
> (ii) an offense under State law, involving
> manufacturing, distributing, or possessing with
> intent to manufacture or distribute, a controlled
> substance (as defined in section 102 of the
> Controlled Substances Act (21 U.S.C. 802)), for
> which a maximum term of imprisonment of ten years
> or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A)(i)-(ii).

Under the ACCA, a prior offense is a "violent felony" if it satisfies the following definition:

> (B) the term "violent felony" means any crime
> punishable by imprisonment for a term exceeding one
> year . . . that —
>
> (i) has as an element the use, attempted use, or
> threatened use of force against the person of
> another; or
>
> (ii) is burglary, arson, or extortion, involves the
> use of explosives, or otherwise involves conduct
> that presents a serious potential risk of physical
> injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

In Johnson v. United States, the Supreme Court held that the ACCA's residual clause — "or otherwise involves conduct that presents a serious potential risk of physical injury to

another" — of Section 924(e)(2)(B)(ii) is "unconstitutionally vague," and that "imposing an increased sentence under the residual clause . . . violates the Constitution's guarantee of due process." 576 U.S. 591, 604-06 (2015). But Johnson's holding has no bearing on the ACCA's definition of a "serious drug offense." United States v. Darling, 619 F. App'x 877, 880 n.5 (11th Cir. 2015).

Courts use two approaches to determine whether a prior conviction under state law qualifies as an ACCA predicate. "[T]he categorical approach applies to indivisible statutes, whereas the modified categorical approach applies to divisible statutes." Spaho v. United States Att'y Gen., 837 F.3d 1172, 1177 (11th Cir. 2016); see Mathis v. United States, 579 U.S. 500, 505 (2016) (explaining that when a statute lists "elements in the alternative, and thereby define[s] multiple crimes," the "modified categorical approach" is used). Under the categorical approach, a conviction qualifies as an ACCA predicate "only if the state statute under which the defendant was convicted defines the offense in the same way as, or more narrowly," than the ACCA. United States v. Conage, 976 F.3d 1244, 1250 (11th Cir. 2020). Under the modified categorical approach, courts are permitted to use certain court documents to determine what crime, with what elements, formed the basis

11

of the conviction. See Id. at 1250 n.5; Shepard v. United States, 544 U.S. 13, 26 (2005).

### (a)  Predicate Offenses

As previously mentioned, Stackhouse received a sentencing enhancement based on four predicate offenses. (Crim. Doc. # 87 at ¶ 22). Relevant here, Stackhouse argues that the ACCA enhancement was unlawful because his sale-of-cocaine conviction for conduct that occurred on April 22, 1987, supposedly does not qualify as a serious drug offense. (Civ. Doc. # 9 at 2). Thus, Stackhouse reasons, he "does not have at least three qualifying predicate offenses." (Id.). For his ACCA predicate offenses, Stackhouse must show that, "more likely than not," the sentencing court relied on a predicate conviction that does not qualify and that the court actually used that conviction to enhance his sentence. Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017).

Stackhouse's argument fails. His sale-of-cocaine conviction for conduct that occurred on April 22, 1987 does qualify as a serious drug offense. That conviction, Stackhouse's other 1987 Florida drug conviction, and his 1990 New York first-degree manslaughter conviction all qualify as

ACCA predicates.[2] Therefore, the ACCA sentencing enhancement was not erroneous.

### i.  Controlled Substance Offenses

Stackhouse has two predicate controlled substance offenses: for sale of cocaine to an undercover officer on April 14, 1987, and for sale of cocaine to an undercover officer on April 22, 1987. (Crim. Doc. # 87 at ¶¶ 29-30; Civ. Doc. # 8-1 at 7-20). Stackhouse argues that his sale-of-cocaine conviction for the April 22, 1987 sale is not a "serious drug offense" because the written judgment states that the conviction was for a third-degree felony and, therefore, his sentence exceeds the ten-year statutory maximum that would otherwise apply to his felon-in-possession conviction. (Civ. Doc. # 9 at 1-2). Stackhouse is incorrect.

Both of Stackhouse's 1987 drug offenses arose because "Stackhouse sold an undercover deputy with the Sarasota, Florida, Sheriff's Office a piece of crack cocaine for $20." (Crim. Doc. # 87 at ¶¶ 29-30). The informations for

---

[2] The Court need not investigate Stackhouse's 1986 armed robbery offense because this Court has already found three qualifying ACCA predicates. Even so, robbery under Florida law, which "has an element of the use of force sufficient to overcome a victim's resistance," categorically qualifies as a "violent felony" under the ACCA's elements clause. See Stokeling v. United States, 586 U.S. 73, 75 (2019) (discussing Fla. Stat. § 812.13(1)).

Stackhouse's April 14, 1987 offense and his April 22, 1987 offense state, "CT I SALE OF COCAINE STATUTE: F.S. 893.13" and "CT II POSESSION OF COCAINE STATUTE: F.S. 893.13." (Civ. Doc. # 8-1 at 7). But the information for the April 14, 1987 offense listed "DEGREE: SECOND DEGREE F" under "CT I" and "DEGREE: THIRD DEGREE F" under "CT II," while the information for the April 22, 1987 offense had a blank space after the word "DEGREE." (Id.). In the judgment for Stackhouse's conviction arising from the April 14, 1987 offense, the "DEGREE OF CRIME" states "2nd F" for "CT I SALE OF COCAINE" and "3rd F" for "CT II POSESSION OF COCAINE." (Id. at 9). However, the judgment for Stackhouse's April 22, 1987 drug offenses states, "3rd F" for both "CT I SALE OF COCAINE" and "CT II POSESSION OF COCAINE." (Id. at 16).

In short, Stackhouse's judgment for the April 22, 1987 offense incorrectly states that sale of cocaine was a third-degree felony. But that categorization is clearly a scrivener's error. See Ashley v. State, 850 So. 2d 1265, 1268 n.3 (Fla. 2003) (defining a scrivener's error as a written clerical error that is not "the result of judicial determination or error"); see also Hope v. Florida, 239 So. 3d 737 (Fla. 5th DCA 2017) (noting that erroneous descriptions of degree of offenses were scrivener's errors). Just because

14

the judgment for the April 22, 1987 offense erroneously lists
sale of cocaine as a third-degree felony, it does not make it
one and it certainly does not enable the Court to ignore the
plain language of the statute. See Hope, 239 So. 3d at 737.

In April 1987, a person who "s[old], purchase[d],
manufacture[d], or deliver[ed], or possess[ed] with intent to
sell, purchase, manufacture, or deliver" cocaine violated
Section 893.13(1)(a)(1). Fla. Stat. § 893.13(1)(a)(1) (1987);
(Civ. Doc. # 8, Attachment B at 2). In April 1987, sale of
cocaine was a second-degree felony, punishable by up to 15
years' imprisonment — the same as it is today. See Fla. Stat.
§§ 775.082(3)(d), 893.13. Despite the scrivener's error,
Stackhouse's sale-of-cocaine conviction for conduct that
occurred on April 22, 1987, is a second-degree felony.

Here, Shepard documents establish that Stackhouse
"unlawfully and feloniously s[old] or deliver[ed]" cocaine on
separate occasions, each occasion forming the basis of
separate informations. See (Civ. Doc. # 8-1 at 7, 14).[3] Both

_____

[3] Shepard documents are permissible because Fla. Stat §
893.13(1)(a)(1) (1987) is divisible. It "delineates [eight]
discrete alternative elements": sale, purchase, manufacture,
delivery, possession with intent to sell, possession with
intent to purchase, possession with intent to manufacture,
and possession with intent to deliver. See Spaho v. United
States Atty. Gen., 837 F.3d 1172, 1177 (11th Cir. 2016)
(analyzing, post-Mathis, a recent version of Fla. Stat. §

sale and delivery of cocaine constitute "distributing . . .
a controlled substance[.]" 18 U.S.C. § 924(e)(2)(A)(ii).
Therefore, both of Stackhouse's drug convictions under Fla.
Stat. § 892.13 — a second degree felony carrying a maximum
sentence of 15 years' incarceration, Fla. Stat. §
775.082(3)(d) — are "serious drug offense[s]." See United
States v. Smith, 775 F.3d 1262, 1268 (11th Cir. 2014) (holding
that a conviction under Fla. Stat. § 893.13 is a "serious
drug offense" under the ACCA).

Stackhouse's two sale-of-cocaine convictions are proper
predicates for his ACCA designation.

### ii. First-degree Manslaughter Offense

In 1990, Stackhouse was convicted of first-degree
manslaughter with intent, in violation of N.Y. Penal Law §
125.20(1). (Crim. Doc. # 99 at 15). A defendant, like
Stackhouse, is guilty of this offense when "[w]ith intent to
cause serious physical injury to another person, he causes
the death of such person or of a third person." See N.Y. Penal
Law § 125.20(1). Because the ACCA is concerned with "*violent*
felon[ies]," the term "physical force" in the force clause of

---

893.13 that involves the same statutory structure as the
statute's 1987 version but does not include "purchase" as an
alternative element).

the ACCA means "*violent force*," that is, "force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 134 (2010) (emphasis added).

Based on its elements — (1) the causation of death (2) by a person intent on causing at least serious physical injury — New York first-degree manslaughter is categorically a violent crime because it necessarily involves the use of violent physical force.[4] Even post-Johnson, the Second Circuit has held that a conviction for New York first-degree manslaughter is "a categorically violent crime under the force clause[] of [the] ACCA." United States v. Scott, 990 F.3d 94, 101 (2d Cir. 2021) (en banc). Because Stackhouse's 1990 offense falls categorically under the ACCA's "force" clause and not the "residual clause," Johnson is inapplicable.

Accordingly, Stackhouse's 1990 conviction for first-degree manslaughter is a "violent felony" and was properly treated as an ACCA predicate. Between this manslaughter conviction and his two Florida serious drug offenses,

---

[4] When deciding whether a conviction constitutes a violent felony, courts "are bound by federal law when [] interpret[ing] the terms in the ACCA, and [] are bound by state law when [] interpret[ing] the elements of state-law crimes." United States v. Braun, 801 F.3d 1301, 1303 (11th Cir. 2015).

Stackhouse has at least three predicate offenses. Thus, Stackhouse's designation as an armed career criminal was correct and his 2255 Motion is denied as to this argument.

### (b)   Jackson I Argument

This Court must also address Stackhouse's additional claim under United States v. Jackson, 36 F.4th 1294 (11th Cir. 2022) ("Jackson I"), vacated 55 F.4th 846, 855 (11th Cir. 2022), which Stackhouse asserted after the remand from the Eleventh Circuit. Stackhouse argues that, under Jackson I, he "is not and never was subject to an ACCA enhancement based on his prior cocaine-related Fla. Stat. § 893.13 offenses." (Civ. Doc. # 66 at 6).

Even if the Court were to assume that this argument is timely and not procedurally defaulted, this claim fails. The Jackson I opinion upon which Stackhouse solely relies has been vacated. True, in Jackson I, the Eleventh Circuit held that, for 18 U.S.C. § 922(g) offenses committed after September 2015, Florida convictions for cocaine committed before July 2017 do not qualify as "serious drug offense[s]" under the ACCA. 36 F.4th at 1304-06. This was because, during the period between September 2015 and July 2017, the Florida drug schedule included ioflupane and the federal schedule did not. Id. The Jackson I court ruled that a district court must

18

look to the version of the controlled-substances list in
effect when a defendant committed his Section 922(g) firearm
offense, rather than the version in effect at the time of the
earlier state drug offense. Id.

However, on rehearing, the Eleventh Circuit vacated the
Jackson I opinion and held that the inquiry is "backward
looking." Thus, the ACCA incorporates the version of the
controlled-substances list in effect when a defendant was
convicted of his prior state drug offense. See United States
v. Jackson, 55 F.4th 846, 855 (11th Cir. 2022) ("Jackson II"),
aff'd sub nom. Brown v. United States, 602 U.S. 101 (2024).
As Jackson II explained, because a federal drug offense
"incorporat[es] the version of the Controlled Substances Act
(and thus the federal controlled-substances schedules) in
effect at the time the defendant's prior [] drug conviction
occurred," the ACCA's use of the Controlled Substances Act to
define prior federal and state "serious drug offense[s]" also
incorporates the version of the federal drug schedules in
effect at the time of his prior conviction. Id. at 858-59.
The Supreme Court has affirmed Jackson II and adopted this
"backward looking" approach, cementing the rejection of
Jackson I's reasoning. See Brown, 602 U.S. at 111, 123 ("[W]e
hold that a state drug conviction counts as an ACCA predicate

19

if it involved a drug on the federal schedules at the time of that offense. Accordingly, we affirm the judgments of the Courts of Appeals.").

In short, the controlled-substances schedule in effect when Stackhouse committed the firearm offense has no application to his previous state drug convictions for ACCA purposes. Only the controlled-substances schedule in effect at the time of Stackhouse's state court drug offenses applies. Jackson II, 55 F.4th at 858. Stackhouse committed his Florida cocaine offenses in 1987 — prior to ioflupane's removal from the federal drug schedule in 2015. Id. at 857-59. So, when Stackhouse was convicted for his sale-of-cocaine offenses in 1987, there was no conflict between the federal and state drug schedules. Thus, Stackhouse's argument, which depends on Jackson I's application, fails. His 2255 Motion is denied as to this claim.

### (c)  **Addendum and Erlinger**

In his recently filed addendum, Stackhouse raises yet another new claim. (Civ. Doc. # 75). He argues that, under the Supreme Court's recent decision in Erlinger v. United States, 602 U.S. 821 (2024), this Court must "vacate his sentence and order a jury to determine whether [his predicate]

offenses meet the ACCA requirement[]" of occurring on separate occasions. (Id. at 2).

In Erlinger, the Supreme Court held that, under Apprendi v. New Jersey, 530 U.S.466 (2000), the question of whether predicate offenses occurred on separate occasions is a question of fact that must be determined by a unanimous jury beyond a reasonable doubt. 602 U.S. at 834–35. "Judges may not assume the jury's factfinding function for themselves, let alone purport to perform it using a mere preponderance-of-the-evidence standard." Id. at 834.

"There is no dispute that Erlinger, which was decided after [Stackhouse's] sentencing and direct appeal, holds that the different occasions inquiry must be decided by a jury. As such, the question is whether Erlinger requires [Stackhouse's] sentence to be vacated or corrected without the ACCA enhancement." Grant v. United States, No. 8:24-cv-2029-WFJ-CPT, 2024 WL 4729193, at *2 (M.D. Fla. Nov. 8, 2024). The Court finds that it does not. The Court agrees with the United States that "Erlinger is not retroactive." Id.

"Generally, a newly recognized right applies retroactively on collateral review only in limited circumstances." Id. at *3 (citing Schriro v. Summerlin, 542 U.S. 348, 351 (2004)). And "[n]ew procedural rules do not

21

apply retroactively on federal collateral review." Edwards v. Vannoy, 593 U.S. 255, 272 (2021). "[A] court other than the Supreme Court may determine retroactivity under § 2255(f)(3)." Steiner v. United States, 940 F.3d 1282, 1289 (11th Cir. 2019) (quoting Figuereo-Sanchez v. United States, 678 F.3d 1203, 1207 (11th Cir. 2012)).

     "To determine if Erlinger applies retroactively, the Court applies the test set forth in Teague v. Lane, 489 U.S. 288, 301 (1989)." Grant, 2024 WL 4729193 at *3. "First, the Court must determine whether Erlinger announced a new rule." Id. Second, the Court must "determine whether that new rule satisfies an exception to the general prohibition against the retroactive application of new rules on collateral review." Figuereo-Sanchez, 678 F. 3d at 1208.

     "The Supreme Court has identified two exceptions to this general prohibition on retroactive application of new rules on collateral review." Grant, 2024 WL 4729193, at *3. The two exceptions are for (1) new substantive rules and (2) "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." Schiro, 542 U.S. at 351-52. Substantive rules are "rules forbidding criminal punishment of certain primary conduct" and "rules prohibiting a certain category of

22

punishment for a class of defendants because of their status or offense." <u>Montgomery v. Louisiana</u>, 577 U.S. 190, 198 (2016). The "watershed" exception is extraordinarily rare, and the Supreme Court has not recognized a single post-<u>Teague</u> rule as a "watershed" exception. <u>Edwards</u>, 593 U.S. at 264.

"The <u>Teague</u> inquiry easily leads to the conclusion that <u>Erlinger</u> announced a new rule of criminal procedure that is not retroactive." <u>Ursery v. United States</u>, No. 3:22-CV-00776, 2024 WL 4652209, at *4 (M.D. Tenn. Nov. 1, 2024). "While <u>Erlinger</u> announced a new rule because (at the time of [Stackhouse's] conviction) district courts routinely decided whether a defendant's three qualifying ACCA convictions were committed on different occasions, the new rule does not fall under either of <u>Teague</u>'s exceptions." <u>Grant</u>, 2024 WL 4729193 at *3. "<u>Erlinger</u>'s new requirement that only a jury can consider the ACCA's occasions inquiry is not a 'substantive rule' because it only alters 'the manner of determining the defendant's culpability.'" <u>Id.</u> (quoting <u>Vannoy</u>, 593 U.S. at 276). "Such a procedural rule does 'not apply retroactively on federal collateral review.'" <u>Id.</u> (quoting <u>Vannoy</u>, 593 U.S. at 276).

"Therefore, because the procedural rule announced in <u>Erlinger</u> is not retroactive on collateral review,

[Stackhouse] is not entitled to relief under Section 2255." Grant, 2024 WL 4729193 at *4; see also Erlinger, 602 U.S. at 859 n.3 (Kavanaugh, J., dissenting) ("For any case that is already final, the Teague rule will presumably bar the defendant from raising today's new rule in collateral proceedings."); Goff v. United States, No. 3:22-CV-00215, 2024 WL 4701882, at *7 (M.D. Tenn. Nov. 6, 2024) ("Because the rule announced in Erlinger is not retroactive on collateral review, Petitioner is not entitled to relief under Section 2255 on this basis."); McAdams v. United States, No. 23-CV-04081-ESK, 2024 WL 4100368, at *4 (D.N.J. Sept. 6, 2024) ("Erlinger did not address which convictions qualified as eligible convictions pursuant to U.S.S.G. § 4A1.2(e)(1), nor did it make its holding retroactively applicable to cases on collateral review."); United States v. Casares-Cuevas, No. 3:12-CR-00038-HDM-VPC, 2024 WL 4216017, at *2 (D. Nev. Sept. 17, 2024) ("[T]he defendant has not identified any case – and the court has found none – holding that any right initially recognized in Erlinger is retroactively applicable on collateral review.").

24

## 2.   <u>Ineffective Assistance of Counsel</u>

Stackhouse also raises an ineffective-assistance-of-counsel claim for failure to challenge the ACCA enhancement. (Civ. Doc. # 2 at 3). His claim fails on the merits.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To establish deficient performance, Stackhouse must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (citation omitted). In other words, Stackhouse must show that "no competent counsel would have taken the action that his counsel did take." <u>Id.</u> at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 1314 (internal quotation marks omitted).

To satisfy <u>Strickland</u>'s second prong — prejudice — Stackhouse must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

Importantly, counsel cannot be ineffective for failing to make predictions about the development of the law. <u>See</u> <u>Denson v. United States</u>, 804 F.3d 1339, 1343 (11th Cir. 2015) (explaining that counsel is not required to anticipate legal developments); <u>see also</u> <u>Cooks v. United States</u>, 461 F.2d 530, 532 (5th Cir. 1972) ("Of course, counsel's inability to foresee <i>future</i> pronouncements which will dispossess the court of power to impose a particular sentence which is presently thought viable does not render counsel's representation ineffective."). Further, "'[a]n attorney cannot be held liable for following the plain terms of a statute when there are not compelling circumstances to suggest [otherwise,]' even [if] a court later decides that interpretation is erroneous." <u>Smith v. Singletary</u>, 170 F.3d 1051, 1054 (11th Cir. 1999) (quoting <u>Cianbro Corp. v. Jeffcoat & Martin</u>, 804 F. Supp. 784, 790 (D.S.C. 1992)).

Counsel's performance here was not deficient. As discussed in a previous section, the ACCA enhancement was properly applied to Stackhouse because he had at least three ACCA predicate offenses. See Smith, 775 F.3d at 1268 (holding that a conviction under Fla. Stat. § 893.13 is a "serious drug offense" under the ACCA); Scott, 990 F.3d at 101 ("In sum, after reviewing the matter *en banc*, this court identifies New York first-degree manslaughter as a categorically violent crime under the force clauses of ACCA and the Career Offender Guideline."). Because the ACCA enhancement was appropriate, counsel was not deficient for failing to object to the ACCA enhancement. See Card v. Dugger, 911 F.2d 1494, 1520 (11th Cir. 1990) ("Counsel cannot be labeled ineffective for failing to raise issues which have no merit."). And Stackhouse was not prejudiced by that failure. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

The Court notes that, rather than raising a meritless objection to the ACCA enhancement, defense counsel presented strong mitigating arguments on Stackhouse's behalf and advocated for a minimum mandatory 180-month sentence. (Crim. Doc. # 99 at 10-19). Although Stackhouse's counsel could not

27

rewrite his criminal history, his counsel effectively persuaded this Court to impose a sentence significantly lower than the 235-month sentence sought by the United States. (Id. at 5-8).

In short, Stackhouse has failed to prove his claim of ineffective assistance of counsel and his 2255 Motion is denied.

## III. **Evidentiary Hearing**

A habeas corpus petitioner is entitled to an evidentiary hearing "if he alleges facts which, if proven, would entitle him to relief." Futch v. Dugger, 874 F.2d 1483, 1485 (11th Cir. 1989). However, a "federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel." Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982).

Stackhouse failed to meet his burden of establishing the need for an evidentiary hearing. See Birt v. Montgomery, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The burden is on the petitioner in a habeas corpus proceeding to establish the need for an evidentiary hearing"); see also Hernandez v. United States, 778 F.3d 1230, 1232-33 (11th Cir. 2015) ("To establish that he is entitled to an evidentiary hearing,

Hernandez has to allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance."). Because Stackhouse's claims lack merit, no evidentiary hearing is required.

**IV.** **Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied**

The Court declines to issue a certificate of appealability because Stackhouse has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Stackhouse to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. See 28 U.S.C. § 1915(a)(3). Stackhouse shall be required to pay the full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is

**ORDERED, ADJUDICATED,** and **DECREED:**

(1) Levi Stackhouse's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 110) is **DENIED.**

(2) Levi Stackhouse's Motion for Appointment of Counsel (Civ. Doc. # 71), Motion for Prompt Disposition (Civ.

Doc. # 72), and a Request for Oral Arguments and Motion for Appointment of Counsel (Civ. Doc. # 74) are **DENIED**.

(3)   The Clerk is directed to enter judgment for the United States of America and to **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>9th</u> of December, 2024.

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE